IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RON BROWN,<br><br>    Plaintiff,<br><br>v.<br><br>LIFE UNIVERSITY, INC.,<br><br>    Defendant. | CIVIL ACTION FILE NO.<br>1:23-cv-02487-MLB-LTW |

**DEFENDANT LIFE UNIVERSITY, INC.'S BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Ron Brown was a Grounds Supervisor for Life University, where he worked for just over 2 years before being terminated. In that time, Brown was caught improperly taking University equipment, falsely reporting his work hours, and berating a subordinate so badly that the subordinate quit almost immediately. For the latter two offenses, he was terminated.

Now, he sues the University, claiming that it discriminated against him because he is black and retaliated against him for complaining about discrimination. But both claims fail as a matter of law because Brown cannot make even a *prima facie* case of either discrimination or retaliation. Throughout discovery, he has been unable to develop evidence of single similarly situated employee who was not terminated. The closest he has come is Javier Cabanas—Brown's own supervisor and the one he accuses of discrimination. But, unlike Brown, Cabanas had worked for the University for three decades and in that time had only two minor disciplinary issues. Likewise, he cannot make a *prima facie* case of retaliation because the only protected activity he engaged in occurred nine months before his termination, and he has no other evidence to suggest a causal link.

Even if he could make a *prima facie* case on either claim, Brown's claims still would fail because the record shows beyond dispute that the University fired him for two legitimate, non-discriminatory, non-retaliatory reasons: his time theft and his inappropriate behavior toward a subordinate. And the supervisor he claims acted discriminatorily—Cabanas—was not involved in the decision to terminate him or the investigation of those two reasons for termination. While Brown insists that it was, in fact, Cabanas, who falsified

2

his timesheet, he has no evidence—even in his own testimony—to support that claim. And as for his inappropriate treatment of his subordinate, he disputes the characterization of that treatment as inappropriate, but otherwise admits to all the material facts of the interaction. Because the facts not in genuine dispute establish that Brown's claims fail as a matter of law, this Court should grant summary judgment for the University.

## FACTS

**I.    Life University's Grounds Department**

**A. The Department's role and relevant policies**

Life University started in 1975 in Marietta Georgia to provide chiropractic education. *History of Life University*, Life University, https://www.life.edu/about-pages/history-of-life/ (last visited June 26, 2024). It later expanded to provide undergraduate education. *Id.* Today, the University campus sits on a 110-acre property, which is maintained by its Grounds Department. Grounds Dep't Manual (Ex. 1) at 2.[1] That department is headed by the University's Director of Facilities, Collin Hilley. Hilley Depo. at 10:3–7.

The Grounds Department has a combination of regular, long-term employees and temporary employees. *Id.* The latter group are directly employed by an outside company with whom the University contracts for temporary workers. *See id.* These temporary employees report their work hours on paper to the contracting company, who pays the temporary workers directly and then bills the University. *Id.* at 17:10–18:7. Regular staff of the University, however, are required to enter their time in software provided by

---

[1] For depositions and other exhibits bearing internal page numbers, citations are to those page numbers. For all other exhibits, citations are to the Acrobat page numbers.

3

a different company, ADP, with which the University contracted to manage payroll and time-and-attendance. Ex. 1 at 7; Ward Aff. (Ex. 2) ¶ 3.

Under department policy "[i]t is each individual [employee's] responsibility to correctly enter, verify, and electronically sign" his own time in ADP's software. Ex. 1 at 7. As a matter of the University's policy and practice, employees are expected to enter their own time and only after they have worked the hours reported. Ex. 2 ¶ 6. However, supervisors have the ability to enter time into the system on behalf of their employees. *Id.* ¶ 5. For example, when an employee calls out sick, his or her supervisor may enter that employee's personal leave hours into ADP's software. *Id.* Each employee has a username and password unique to them through which they log into the ADP software. *Id.* ¶ 3. Accordingly, when a supervisor enters time on behalf of another, the software records that the supervisor, rather than the supervisee, entered the time. *Id.* ¶ 5.

### B. Javier Cabanas

Among the Grounds Department employees who reported directly to Hilley was the Assistant Facilities Manager, Javier Cabanas. Hilley Depo. at 19:10–19; Ltr. from Ken Person to Javier Cabanas (July 26, 2021) (Ex. 3). Cabanas started with the University in October 1995 in an entry level position. Ltr. from John S. Wheeler (Aug. 16, 2005) (Ex. 4). Over the years he moved up to Lead Groundsman, then Foreman, Groundskeeper, and ultimately Assistant Facilities Manager. Memo. from John S. Wheeler (June 19,1998) (Ex. 5); Lead Groundsman Job Description (Ex. 6); Ex. 3.

In that time, Cabanas was subject to discipline only twice. First, in November 2013, he received a two-day suspension for a verbal altercation with

4

another employee. Absence Form (Nov. 15, 2013) (Ex. 7); Employee Counseling Form (Nov. 13, 2013) (Ex. 8). Second, nine years later, in August 2022, he received another two-day suspension for improperly entering time. Absence Form (Sept. 1, 2022) (Ex. 9). Following the latter suspension, he resigned. Email from Monica Ward to Maya Grant (Sept. 27, 2022) (Ex. 10).

**II.     Brown's tenure at the University**

Brown started at the University as a Groundskeeper in March 2021. New Hire Payroll Status Form (Ex. 11) at 1. He was later promoted to Grounds Supervisor. *See* Brown Depo. at 21:17–22:1; Email from Lisa Reed to Collin Hilley (June 29, 2022) (Ex. 12) at 1. During most of his tenure and all of the relevant time period, Cabanas was his supervisor. Brown Depo. at 20:11–16, 22:7–17, 24:2–23.

In April 2022, Hilley learned that Brown had been caught on security camera taking the University's lawn equipment and gasoline and loading it into his personal truck. Employee Counseling Form Addendum (May 5, 2022) (Ex. 13). In response, Hilley issued him a final written warning, explaining to Brown that he occupied a position of trust, and that using the University's equipment for personal use violated its policies. *Id.* Brown acknowledged that he understood the policy. *Id.*

A few months later, in August 2022, Brown reported to Hilley that a temporary employee, Adamari Obregon, had falsely stated in her timesheets that she had worked when she had not. Ex. 2 ¶ 7; *see* Hilley Depo. 113:19–114:5; Email from Collin Hilley to Kelley Reade (Aug. 15, 2022) (Ex. 14). When confronted about the issue, Obregon conceded that she had made false statements on her timesheet. Ex. 14. She was terminated as a result. *Id.*

5

The following week, Hilley learned from Cabanas, and relayed to Ward, that Brown may have falsely entered his time into ADP. Ex. 2 ¶ 8. Hilley provided Ward with text messages showing that Brown had called out sick on August 11 and 12, 2022. *Id.*; Email from Collin Hilley to Monica Ward (Aug. 22, 2022) (Ex. 15) at 2. However, when she reviewed records produced by ADP's software, she discovered that, on August 17, 2022, Brown had personally entered 8 worked hours for August 12. Ex. 2 ¶ 8; Screenshot (Ex. 16).

After this incident was brought to Ward's attention, she investigated whether other individuals in the Grounds Department had falsified their timesheets. Ex. 2 ¶ 10. That investigation revealed that, Cabanas, using his own login credentials, sometimes entered personal leave for his supervisees when they called out, but failed to do so consistently. *Id.* ¶ 11. On Ward's recommendation, Cabanas received the two-day suspension referred to above. *Id.*; Ex. 9.

On August 17, 2022, between Brown's reporting of Obregon and the discovery of Brown's own false time entries, Hilley personally witnessed an interaction Brown had with a temporary employee named Chris who was Brown's subordinate. Brown Depo. at 37:19–39:18; Hilley Depo. at 62:6–63:10, 75:24–77:4; *see also* Ltr. from Collin Hilley to Ron Brown (Aug. 22, 2022) (Ex. 17) at 1 (indicating that this incident occurred on the Wednesday prior to the date of the letter). Brown and Hilley agree in their accounts of the interaction that Brown had a conversation with an employee named Chris during which Brown expressed dissatisfaction with Chris's job performance,

6

that after the conversation Chris left work, that Chris did not return to work the following day, and that Chris quit his job at the University shortly thereafter. Brown Depo. at 37:19–39:18; Hilley Depo. at 62:6–63:10, 75:24–77:4. They disagree on whether Brown's behavior during that interaction was appropriate. Both at the time of the incident and in his depositions in this case, Hilley described what he saw as Brown "ruthlessly berat[ing]" Chris. Ex. 15 at 3; Ex. 17 at 1; Hilley Depo. at 62:6–13, 75:24–76:11. Brown insists that he did not 'berate' Chris. Brown Depo. at 49:24–50:7.

Based on the results of Ward's timesheet investigation and this incident, Hilley and Ward determined that Brown should be terminated. Ex. 17 at 1–2; Hilley Depo. at 63:15–20. On August 22, 2022, Hilley and Ward met with Brown and informed him of the decision and the reasons for his termination. Ex. 2 ¶ 13; Hilley Depo. at 98:2–8. Although Brown disputed those reasons, he did not provide any factual basis for his denials or evidence that these things were false. Ex. 2 ¶ 13.

### III.   This case

On October 14, 2022, Brown filed a charge of discrimination with the EEOC alleging that the University discriminated against him based on race and retaliated against him for complaining of discrimination. *See generally* Charge of Discrimination No. 410-2023-01152 (Ex. 18) at 1. He asserted that Cabanas spoke about black people in Spanish and laughed, called black employees lazy, accused black employees of stealing, and did not give them overtime. *Id.* at 1. He asserted that he complained about this behavior, but nothing was done. *Id.* Then, in August 2022, a temporary employee allegedly

threatened him for informing the University that she was falsifying her time. *Id.* He was subsequently fired. *Id.*

The EEOC issued a notice of right to sue on March 28, 2023. Doc. 1 ¶ 6. On June 2, 2023, Brown filed the Complaint in this action. *See* Doc. 1. He makes substantially the same factual allegations as those in his charge of discrimination. *See id.* ¶¶ 11–24. Based on these allegations, he raised two counts: in Count I, he asserts that he was discriminated against based on his race; and in Count II, he claims that his termination was in retaliation for unspecified activity protected by Title VII. *Id.* ¶¶ 25–38.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The fact in dispute must be *material*, in that its determination is necessary to the outcome of the suit, and the dispute must be *genuine*, in that the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248. A mere "scintilla" of evidence, or evidence of insignificant probative value in support of the opposing party is not enough. *Id.* at 249–50.

## ARGUMENT

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, prohibits employers from discriminating against an individual with respect to the terms and conditions of his employment on the basis of race and for

retaliating against individuals who engaged in activity protected by that act. When a Title VII plaintiff lacks direct evidence of his employer's discriminatory or retaliatory intent, he may instead rely on the *McDonnell Douglas*[2] framework to establish a genuine issue of material fact with regard to his employer's intent. *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (2015) (discrimination); *Brown v. Ala. Dep't of Trans.*, 597 F.3d 1160, 1181 (11th Cir. 2010) (retaliation).

Here, however, Brown cannot establish even the first step of the *McDonnel Douglas* framework—making a *prima facie* case of either discrimination or retaliation—because he cannot identify a similarly situated individual of a different race who received more favorable treatment, nor a causal connection between his alleged complaint of discrimination and his termination. Even if he could, the evidence establishes beyond dispute that he was fired for egregious violations of University policy and unprofessional behavior.

### I. Brown cannot establish a *prima facie* case of either race discrimination or retaliation

#### A. Brown cannot identify a similarly situated individual of a different race who was treated more favorably than he

Under the *McDonnell Douglas* framework, the plaintiff bears an initial burden to show a *prima facie* case of racial discrimination. That is, he must present evidence that (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) he was qualified to do the job in question, and

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

9

(4) his employer treated a similarly situated individual outside the plaintiff's protected class more favorably it treated him. *Flowers*, 803 F.3d at 1336.

To establish the fourth prong of the *prima facie* case, a plaintiff must generally identify a "comparator"—a fellow employee who is "similarly situated in all material respects" and who received more favorable treatment by the employer. *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022). "[O]rdinarily, a similarly situated comparator and the plaintiff will: have engaged in the same basic conduct or misconduct, be subject to the same employment policies, have the same supervisor(s), and share an employment or disciplinary history." *Id.*

There is no evidence in the record that any non-black University employee engaged in the same kind of misconduct as Brown—falsifying his time, berating his subordinates, and stealing from the University—while otherwise similarly situated. Throughout discovery, Brown has sought to develop evidence that Javier Cabanas fits the bill—but his efforts have failed. Cabanas is not similarly situated along any of the axes that the Eleventh Circuit identified in *Jenkins*.

First, Cabanas did not "engage in the same basic conduct or misconduct" as Brown." *See id.* Certainly, Brown adduced evidence that Cabanas, like Brown, violated University policies regarding time entries. Ex. 9. But Cabanas's violations were his mere inconsistency in entering personal leave for his supervisees, while Brown's involved falsely claiming to have worked hours he did not. Ex. 2 ¶¶ 8, 11. Moreover, that was not the only misconduct for which Brown was terminated; instead, Brown was terminated both for his

improper time entry *and* for "ruthlessly berat[ing] a temporary employee/subordinate." Ex. 17 at 1; *see Anthony v. Georgia*, 69 F.4th 796, 803 (2023) (noting that plaintiff was suspected of violating multiple employer policies, unlike his proffered comparator); *Hester v. Univ of Ala. Birmingham Hosp.*, 798 F. App'x 453, 457 (11th Cir. 2020) (finding the fact that a plaintiff was fired for two reasons, and a proffered comparator, for one, sufficient to disqualify the proffered comparator). Second and third, Cabanas and Brown were neither subject to the same employment policies nor did they have the same supervisor, *see Jenkins*, 26 F.4th at 1249, for the simple reason that Cabanas was, himself, Brown's supervisor. Brown Depo. at 22:7–12.

Finally, and most importantly, Cabanas and Brown did not have the same, or even similar, employment and disciplinary histories. Brown worked at the University for only a little more than two years. Separation Notice (Aug. 30, 2022) (Ex. 19) at 1. And in those approximately two years, he not only engaged in the misconduct for which he was fired, he also received a written, final warning for the independent policy violation of taking University property for his personal use. Ex. 13.

Cabanas, by contrast, had worked at the University for almost three decades. Application for Employment by Javier Cabanas (Oct. 16, 1995) (Ex. 20). In that time, he worked his way up from an entry level position in 1995 to an Assistant Facilities Manager in 2021. *Id.*; Ex. 3; Ex. 4. In that time, he was disciplined for violating University policies only twice—once in 2013 for an altercation with another employee, and almost ten years later, in 2022, for payroll violations. Ex. 7; Ex. 8; Ex. 9. This difference in tenure and experience

11

within the University is itself sufficient to eliminate Cabanas as a comparator. *See, e.g.*, *Earle v. Birmingham Bd. of Educ.*, 843 F. App'x 164, 167 (11th Cir. 2021) (noting difference in tenure in rejecting proffered comparator); *Herron-Williams v. Ala. State Univ.*, 805 F. App'x 622, 629 (11th Cir. 2020) (same).

### B. There is no evidence of a causal connection between Brown's protected activity and his termination, months later

As with discrimination, the *McDonnell Douglas* framework requires a plaintiff alleging retaliation to first make a *prima facie* case, albeit with slightly different elements. The plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected activity. *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1135 (11th Cir. 2020) (en banc).

The Eleventh Circuit has not answered definitively whether the plaintiff must provide sufficient evidence that a jury could find but-for causation at the *prima facie* stage or later, at the pretext stage. *See Gogel*, 967 F.3d at 1135 n.13 (noting that the question had become the subject of a circuit split following the Supreme Court's decision in *Nassar*[3] and remains open in the Eleventh Circuit).[4] Here, however, Brown cannot make a *prima facie* case even applying the lower, pre-*Nassar*, "not wholly unrelated" standard. *See Kidd v. Mando*

---

[3] *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013).

[4] A later panel of the Eleventh Circuit construed *Gogel* as standing for the proposition that the earlier "not wholly unrelated" standard had survived *Nassar*. *See Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1294 (11th Cir. 2021). However, in *Gogel*, the defendant had conceded that the plaintiff had made a *prima facie* case and, thus, the court had no need to decide the issue, and expressly did not. 967 F.3d at 1135 n.13. Moreover, to the extent *Tolar* indicates that the issue is settled, that statement was *dicta* because, as the court said, the "[p]laintiff failed to meet the causal requirement at either the *prima facie* or the pretext-rebuttal stage." 997 F.3d at 1295.

*Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013). Even under that standard, "if there is a substantial delay between the protected [activity] and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).

Brown only engaged in activity arguably protected by Title VII one time during his tenure at the University: On November 21, 2021 he sent an email to Ward complaining that "[f]or the [second] time th[at] month the African Americans was not allowed to work over time," while other crew members were. Email from Monica Ward to Ron Brown (Nov. 22, 2021) (Ex. 21). He was terminated on August 22, 2022—nine months and one day later. And even applying the lower, "not wholly unrelated standard," a delay of more than three or four months is too long to make out a *prima facie* case of retaliation. *Higdon*, 393 F.3d at 1220. Thus, Brown's retaliation claim fails as a matter of law.

## II. The University fired Brown for multiple, independent, non-discriminatory, non-retaliatory reasons

If the plaintiff makes this *prima facie* showing, the burden shifts to the employer to show that it had a legitimate, non-discriminatory (and non-retaliatory) reason to take that adverse action. *Flowers*, 803 F.3d at 1336. This reason must be "legitimate" only in that it was the actual reason the employer took the adverse action—*i.e.*, in that it was not pretextual. *See id.* at 1336, 1338. An employer may terminate an employee for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Id.* at 1338 (quoting *Nix v.*

13

*WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984)) (internal quotation marks omitted).

In the letter informing Brown of his termination, which was read aloud to him at his termination meeting, the University identified two reasons for Brown's termination. Ex. 17 at 1; Hilley Depo. at 98:4–8. First, the University explained that, after investigating his time entries, the University concluded that on multiple occasions he had violated the University's time entry policies both by falsely claiming to have worked hours that he did not and by entering time before he had worked it. Ex. 17 at 1. Second, the University explained that Hilley had "witnessed [him] ruthless berate a temporary employee/subordinate" in a manner that "in this trainer/trainee setting was inappropriate." *Id.*

### A. Brown falsified his time

Brown claims that this is false and that he did not enter time improperly. Brown Depo. at 34:24–35:1. Instead, he alleges that it was Cabanas who falsified Brown's time. *Id.* at 31:19–34:20. His testimony on this point is, however, irrelevant for summary judgment purposes for two reasons.

First, Ward, the University's Director of Employee Engagement, concluded that Brown had falsified his time only after performing an independent investigation. In that investigation, she examined history of Brown's time entries, which showed that he had, in fact, entered the offending time. Ex. 2 ¶¶ 7–12; Ex. 15 at 2–3; Ex. 16. As said above, an employer may terminate an employee for "a reason based on erroneous facts . . . as long as its action is not for a discriminatory reason." *Flowers*, 803 F.3d at 1338. Thus, even if Ward's investigation somehow erroneously concluded that Brown

14

himself had entered the offending time, that conclusion still constituted a legitimate, non-discriminatory basis for terminating Brown absent some evidence that Ward knew the conclusion was wrong. And there is no evidence in the record that Ward knew the conclusion was wrong.

Second, it is plain from Brown's testimony that the claim that Cabanas entered the offending time is, at best, mere speculation and, at worst, a *post hoc* creation intended to create a false factual dispute. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Unsupported speculation does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931–32 (7th Cir. 1995)) (cleaned up)); *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1301 (11th Cir. 2012) ("Although all justifiable inferences are to be drawn in favor of the nonmoving party, inferences based upon speculation are not reasonable." (quotation marks and citations omitted)).

Brown not only failed to identify any basis for his belief that Cabanas had modified his timesheets, he admitted that he "d[id]n't know how [Cabanas] did it." Brown Depo. at 31:22–23. Nor could he recall a specific occasion on which this alleged modification occurred. *See id.* at 31:11–32:13. What's more, Brown immediately contradicted himself—saying in one breath that Cabanas had added overtime to his timesheet and in the next breath that he had only ever been paid for time he actually worked. *Id.* at 32:4–9, 33:1–34:9. Thus, the record evidence shows beyond genuine dispute both that Brown falsified his

timesheet, and that Brown's termination was based on Ward's independent investigation and confirmation of that fact.

### B. Brown berated his subordinate in a manner that violated Life University's policies and basic standards of decency

Likewise, Brown claims that Hilley's allegation that he "berated" a subordinate is false. Brown Depo. at 50:5–10. Importantly, however, Brown admits that the interaction occurred—he just characterizes it differently. *See id.* at 37:19–39:18. Both Brown and Hilley testified that Brown had a conversation with an employee named Chris during which Brown expressed dissatisfaction with Chris's job performance, that after the conversation Chris left work, that Chris did not return to work the following day, and that Chris quit his job at the University shortly thereafter. *Id.*; Hilley Depo. at 62:6–63:10, 75:24–77:4.

Brown, then, does not claim that there is any dispute of fact regarding whether this interaction occurred. He disputes only Hilley's characterization of it. But "the fact that an employer's decision was subjective, or that it was based on an unwritten or informal policy subject to differing interpretations," is not the same as establishing that it was not the employer's true reason for termination, and is not enough to rebut a proffered legitimate, non-discriminatory reason. *Dent v. Ga. Power Co.*, 522 F. App'x 560, 563 (11th Cir. 2013). Brown is entitled to feel that the way he spoke to the subordinate was appropriate, but that feeling does not create a genuine issue of material fact as to Hilley's interpretation of the interaction. And, having admitted that the interaction took place and that it caused the subordinate to leave work and

ultimately quit, Brown cannot do more than speculate about whether Hilley's expressed opinion about the interaction was true. *Cordoba*, 419 F.3d at 1181.

## CONCLUSION

Ronald Brown claims he was terminated because he is black and because, nine months before his termination, he complained of alleged racial discrimination at the University. Really, he was terminated because, in the approximately two years he worked at Life University, he was found to have improperly taken University equipment, behaved so inappropriately toward a subordinate that that subordinate quit almost immediately, and then was found to have falsely reported to the University that he worked more hours than he did. Unsurprisingly, he cannot identify another employee who acted similarly and was not terminated. Nor can he show that these legitimate, non-discriminatory, and non-retaliatory reasons were not the true basis for his termination. Accordingly, his claims fail as a matter of law. This Court should grant summary judgment for the University.

This 3rd day of July, 2024.

                                                            **HALL BOOTH SMITH, P.C.**

| | |
|---|---|
| 191 Peachtree Street NE | */s/ Allison C. Averbuch* |
| Suite 2900 | RUSSELL A. BRITT |
| Atlanta, GA  30303 | Georgia Bar No. 473664 |
| 404-954-5000 / 404-954-5020 Fax | ALLISON C. AVERBUCH |
| rbritt@hallboothsmith.com | Georgia Bar No. 275988 |
| aaverbuch@hallboothsmith.com | DYLAN MAGRUDER |
| dmagruder@hallboothsmith.com | Georgia Bar No. 810717 |
| | *Attorneys for Defendant Life University, Inc.* |

17

## **LOCAL RULE 7.1D CERTIFICATE**

I certify that this document was prepared using Century Schoolbook 13-point font.

This 3rd day of July, 2024.

|  |  |
|---|---|
|  | **HALL BOOTH SMITH, P.C.** |
| 191 Peachtree Street NE | */s/ Allison C. Averbuch* |
| Suite 2900 | RUSSELL A. BRITT |
| Atlanta, GA  30303 | Georgia Bar No. 473664 |
| 404-954-5000 / 404-954-5020 Fax | ALLISON C. AVERBUCH |
| rbritt@hallboothsmith.com | Georgia Bar No. 275988 |
| aaverbuch@hallboothsmith.com | DYLAN MAGRUDER |
| dmagruder@hallboothsmith.com | Georgia Bar No. 810717 |
|  | *Attorneys for Defendant Life University, Inc.* |

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the within and foregoing **DEFENDANT LIFE UNIVERSITY, INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** upon all counsel of record by electronically filing same with the CM/ECF filing system, and that service of the following individuals will be accomplished by CM/ECF system:

Matthew C. Billips
Barrett & Farahany
P. O. Box 530092
Atlanta, GA  30353
matt@justiceatwork.com
*Attorney for Plaintiff*

This 3rd day of July, 2024.

**HALL BOOTH SMITH, P.C.**

| | |
|---|---|
| 191 Peachtree Street NE | */s/ Allison C. Averbuch* |
| Suite 2900 | RUSSELL A. BRITT |
| Atlanta, GA  30303 | Georgia Bar No. 473664 |
| 404-954-5000 / 404-954-5020 Fax | ALLISON C. AVERBUCH |
| rbritt@hallboothsmith.com | Georgia Bar No. 275988 |
| aaverbuch@hallboothsmith.com | DYLAN MAGRUDER |
| dmagruder@hallboothsmith.com | Georgia Bar No. 810717 |

*Attorneys for Defendant Life University, Inc.*